IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ANUSUYA SHAPLEY,<br><br>Plaintiff,<br><br>vs.<br><br>CARRINGTON MORTGAGE SERVICES, LLC; DOES 1–20,<br><br>Defendants. | Civil No. 26-00429 MWJS-WRP<br><br>ORDER GRANTING MOTION TO DISMISS AND GRANTING PARTIAL LEAVE TO AMEND |

**INTRODUCTION**

Plaintiff Anusuya Shapley brought this lawsuit, pro se, against Defendant Carrington Mortgage Services, LLC ("CMS"), the mortgage loan servicer for Plaintiff's residential mortgage loan. Shapley's complaint was initially filed in Hawaiʻi state court, where pleading rules do not require the degree of specificity federal courts demand. But after CMS removed the action to federal court, it moved to dismiss on the ground that the complaint's allegations are insufficient.

The court agrees that, in its current form, the complaint's allegations do not survive federal pleading standards. For that reason, CMS's motion to dismiss is GRANTED and the complaint is DISMISSED. But Shapley should have an opportunity to address the deficiencies in her complaint, and the court therefore GRANTS her leave to amend.

**BACKGROUND**

The complaint alleges the following facts which, in considering CMS's motion to dismiss, the court must presume to be true. *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982).

Shapley owns a home in Hawai'i County, which she purchased with the assistance of a mortgage loan that is serviced by CMS. Dkt. No. 1-1, at PageID.8–9. In around 2024, Shapley "fell behind on the mortgage loan," with about $11,000 past due. *Id.* at PageID.9. To get back on track, she pursued two alternative avenues: saving up enough money to pay off the balance, on the one hand, and applying for mortgage assistance or mitigation, on the other. *Id.* A month into the effort, the first option seemed more promising: Shapley had saved up "the funds necessary to pay the full past-due balance and bring the loan current." *Id.* But CMS "refused to accept" her payment, telling her that it first needed to prepare a "reinstatement letter." *Id.* at PageID.10. This letter would take fourteen days to prepare and would calculate "all amounts past due and determine whether any attorney's fees or other charges had been added." *Id.*

About fourteen days later, CMS indeed provided the reinstatement letter. But CMS brought Shapley a new development: her "mortgage assistance application had been approved." *Id.* And, CMS explained, if Shapley chose the mortgage assistance route, "the approximately $11,000 delinquent amount could be placed at the end of the

loan." *Id.* Thinking this was positive news, Shapley accepted the mortgage assistance, and the loan was brought current. *Id.*

Or so Shapley thought. The following month, Shapley made her required monthly mortgage payment without issue. But the month after that, CMS refused to accept Shapley's regular monthly payment unless she also paid "nearly $5,000 in alleged attorney's fees." *Id.* at PageID.10–11. Puzzled by this development—given that Shapley had been granted mortgage assistance that supposedly brought her loan current and that she was not previously told about any outstanding attorney's fees—Shapley submitted a written dispute of the attorney's fees. *Id.* at PageID.11–12. CMS responded that the fees were legitimate. *Id.* at PageID.12.

But CMS still had not given Shapley a "complete and adequate accounting or documentation showing the basis for the nearly $5,000 in attorney's fees." *Id.* at PageID.12. So Shapley "requested an accounting and breakdown of the alleged attorney's fees." *Id.* CMS failed to provide it. And despite Shapley calling multiple times and sending letters "attempting to resolve this issue with the fees and make payment of the regular monthly mortgage payments," CMS continued to insist that it would not accept her monthly mortgage payments unless she paid the fees. *Id.*

During one of these calls, Shapley asked if she could pay using Western Union or MoneyGram. CMS responded "that she could but the payments may or may not be applied to the mortgage loan." *Id.* Over the next year, Shapley made payments in this

manner to stop her mortgage account from falling further behind. *Id.* at PageID.13. These efforts did not work. Although MoneyGram's records showed that a payment went through on April 24, 2025, CMS insisted that its records showed the payment was reversed. *Id.* at PageID.14. The same happened to other attempted payments. *Id.* Through these conversations, Shapley gave CMS "multiple opportunities to correct the account, accept [her] mortgage payment, provide a full accounting, remove unsupported fees, or properly investigate the matter," but CMS failed and refused to do so. *Id.* at PageID.15.

CMS's course of conduct caused Shapley financial harm, emotional distress, damage to credit, increased loan charges, increased default amounts, risk of foreclosure, loss of time, and other damages to be proven at trial. *Id.* at PageID.16. And so Shapley brought this lawsuit in Hawai‘i state court. Her complaint advances what it describes as eight separate counts: (1) unfair or deceptive practices under Hawai‘i Revised Statutes Chapter 480; (2) violation of "RESPA / Regulation X"; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) accounting; (6) declaratory relief; (7) injunctive relief; and (8) punitive damages. *Id.* at PageID.16–25.

Because the Hawai‘i Supreme Court has "expressly reject[ed]" federal pleading standards as "contrary to [Hawai‘i's] well-established historical tradition of liberal notice pleading" *Bank of Am., N.A. v. Reyes-Toledo*, 143 Hawai‘i 249, 262, 428 P.3d 761, 774 (2018), Shapley had no obligation to comply with the more stringent federal

standards when she filed her complaint in state court. But those federal pleading standards became relevant when CMS removed the lawsuit to federal court. Dkt. No. 1 (alleging both federal question and diversity jurisdiction).[1] And CMS now moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that the complaint indeed fails to satisfy federal pleading standards. Dkt. No. 8. Shapley, still proceeding pro se, filed an opposition, Dkt. No. 13, and CMS filed a reply, Dkt. No. 18. The court finds this motion suitable for disposition without a hearing, as authorized by Local Rule 7.1(c).

## DISCUSSION

Although Shapley's complaint might well have been sufficient under the less demanding state pleading requirements, CMS argues here that it fails to satisfy federal pleading standards. These federal standards are designed to ensure that, before the

---

[1] Because Shapley's complaint currently contains a federal claim (namely, the RESPA / Regulation X claim), CMS is correct that this court has federal question jurisdiction. It is less clear whether the court has diversity jurisdiction. Shapley's complaint and CMS's removal petition both allege only that Shapley is a "resident" of Hawaiʻi. *See* Dkt. No. 1, at PageID.3; Dkt. No. 1-1, at PageID.8; *ATC Makena LLC v. Kaiama*, Civ. No. 25-00236, 2025 WL 1747927, at *3 (D. Haw. June 24, 2025) (explaining that the diversity jurisdiction statute "speaks of citizenship, not of residency," and that an allegation of residency "is insufficient to establish" a party's citizenship (cleaned up)).

As noted earlier, the court is dismissing Shapley's complaint, but will grant her leave to amend. Accordingly, if Shapley chooses not to reassert a federal claim in an amended complaint, the court will be required to issue an order to show cause directing CMS to allege—if it can—that Shapley is not merely a resident but also a citizen of Hawaiʻi.

expensive exercise of discovery begins in any case, a plaintiff has made factual allegations that if proven would be sufficient for her to prevail. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (explaining that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court" (cleaned up)).

To satisfy federal standards, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In assessing the adequacy of a complaint, the court accepts all facts alleged as true and draws all reasonable inferences in the plaintiff's favor. *Baker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (cleaned up). But the complaint must still allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

With these standards in hand, the court turns to the counts in Shapley's complaint.

### A. The Contract and Implied Covenant Claims

We begin with Shapley's contract and implied-covenant claims, which are her third and fourth counts. Dkt. No. 1-1, at PageID.18–19. CMS contends that these claims, in their current form, fall short in several respects. The court agrees.

As CMS points out, the complaint does not identify what document or documents—let alone what provisions within any such documents—CMS is alleged to have breached. The complaint alleges that after Shapley fell behind on her mortgage, CMS did not allow her to immediately pay the outstanding amount, but instead required her to wait fourteen days for a reinstatement letter. But the complaint nowhere alleges that Shapley's mortgage or any other contractual agreements, or any implied covenant, prohibited CMS from requiring a party behind on their payments to wait for a reinstatement letter before paying off the amounts owed. Likewise, although Shapley alleges that CMS has not explained where the $5,000 in attorney's fees came from, she does not identify any contractual provision or implied covenant that requires CMS to do so (let alone a provision that precluded it from seeking those fees). And while the complaint alleges that CMS blocked Shapley from making her monthly payments until she took care of the outstanding $5,000 fee, she does not identify any contractual provision or implied covenant that prohibited CMS from doing this. In short, even accepting all of Shapley's factual allegations as true, she has not alleged facts that would establish a breach of contract or of an implied covenant of good faith and fair dealing.

In her opposition to the motion to dismiss, Shapley offers an additional proposed fact in support of her contract and implied-covenant claims: that through the mortgage assistance that it granted her, CMS "expressly represented that the transaction would

bring the mortgage current." Dkt. No. 13, at PageID.182. It follows, Shapley argues, that when CMS subsequently demanded $5,000 in fees, that was a breach of the agreement and implied covenant. There are two flaws in this argument.

The first is that this proposed fact does not appear in the complaint itself; the complaint only alleges that CMS represented to her that if she accepted the mortgage assistance, "the approximately $11,000 delinquent amount could be placed at the end of the loan," Dkt. No. 1-1, at PageID.8–9, and it nowhere alleges that CMS took the further step of representing that no fees or costs would flow from the grant of this assistance. And CMS is correct that a party cannot amend their complaint by making new factual assertions in an opposition to a motion to dismiss.[2]

A further flaw is that Shapley does not clearly assert (either in her complaint or in her opposition) that the grant of mortgage assistance was a contract in the first place—that is, that there was "an offer, an acceptance, and consideration." *Sexton v. Xerox Corp.*, Civil No. 24-00188, 2024 WL 4201186, at *3 (D. Haw. Sept. 16, 2024) (explaining that under Hawai'i state law, "no contract exists" without all three). To be

---

[2] If Shapley were to make this allegation in a future complaint, she would need to clarify whether this representation appears in the mortgage assistance documentation itself, or whether instead it was an oral representation that someone at CMS made to her. That is to say, Shapley should clarify whether her argument is that CMS is violating the written terms of the agreement, or instead that CMS made a fraudulent statement about the meaning of the written document such that extrinsic evidence (beyond the written terms of the agreement) should be considered in determining the contract's meaning. *See State Farm Fire and Cas. Co. v. Pac. Rent-All, Inc.*, 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999).

sure, Shapley does allege that CMS offered her mortgage assistance and she accepted it. But what is missing is consideration—that is, some allegation that Shapley gave something of value in exchange for its grant of mortgage assistance. Any such consideration need not have been substantial. For example, Shapley might satisfy this requirement by alleging something as simple as her agreeing to new conditions for her mortgage loan in exchange for mortgage assistance. But without that factual allegation, the court cannot say that her complaint alleges facts that, taken as true, show a plausible claim for relief.

In short, Shapley's complaint does not adequately allege a claim upon which relief might be granted. CMS's motion to dismiss these claims is therefore GRANTED.[3]

**B. The RESPA / Regulation X Claims**

Shapley's sole federal law claim is brought under the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. § 1024, a regulation promulgated by the Consumer Financial Protection Bureau under RESPA.

---

[3] CMS argues that there is another flaw: although the complaint alleges that the $5,000 fee concerned attorney's fees, documents attached to the complaint show that there were instead $94.05 in legal and foreclosure costs, $3,600 in attorney's fees, and $3,839.80 in late charges. Dkt. No. 8. In any amended complaint, Shapley should be sure to accurately describe the nature of the fees at issue. But if Shapley's basic theory is that the contract did not allow any fees, then their precise nature is not necessarily material. The key for any future amended complaint will be to identify what contractual provision (or oral assertion that Shapley alleges was fraudulent) represented that none of these fees would be permissible once mortgage assistance was accepted.

Section 2605(f) of RESPA "establishes a private right of action for a borrower to enforce RESPA and Regulation X," *Hahn v. Select Portfolio Servicing, Inc.*, 424 F. Supp.3d 614, 624 (N.D. Cal. 2020), but Shapley's complaint does not identify what provisions of the statute or regulation she alleges CMS violated.

Shapley instead generally alleges that CMS "failed to properly handle Plaintiff's payment, account status, loss mitigation assistance, dispute, and request for information"; "failed to provide a reasonable and complete explanation for the nearly $5,000.00 in disputed attorney's fees"; "failed to provide sufficient documentation showing the basis for the alleged attorney's fees"; "failed to properly correct the account after Plaintiff disputed the fees"; "refused to accept Plaintiff's regular mortgage payment unless Plaintiff paid disputed and unexplained attorney's fees"; and "caused her to suffer actual damages." Dkt. No. 1-1, at PageID.18.

Construed liberally, Shapley appears to contend, in part, that CMS failed to provide her with an adequate response to her inquiries about the $5,000 in disputed attorney's fees and that this constituted a violation of RESPA and Regulation X. And RESPA does impose a legal duty on servicers of federally related mortgage loans to "respond to borrower inquiries." 12 U.S.C. § 2605(e). In particular, "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a

written response acknowledging receipt of the correspondence within 5 days." *Id.* § 2605(e)(1)(A). RESPA further provides, as relevant:

> **(2) Action with respect to inquiry**
>
> Not later than 30 days . . . after the receipt from any borrower of any qualified written request . . . and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> > (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . . ;
> >
> > (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> >
> > > (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer"
> > >
> > > . . .
> >
> > (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> >
> > > (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer . . . .

*Id.* § 2605(e)(2)(A)–(C).

Assuming that Shapley intends to rely on these provisions (and their corresponding provisions in Regulation X), the complaint in its current form is not sufficient to state a plausible claim. The complaint does not allege that CMS failed to acknowledge or adequately respond to any "qualified written request" (or "QWC") that she conveyed to it. It does not allege that any of her communications constituted a

QWC. And RESPA carefully limits what may be treated as one: "a [QWC] shall be a written correspondence . . . that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B)(i)–(ii). It is clear that none of Shapley's telephone calls would count as QWCs. And her complaint does not allege that any of her written correspondence met all of the requirements of the QWC definition, either. For this threshold reason, then, the complaint does not state a plausible claim for relief under § 2605(e).[4] *See generally Menashe v. Bank of New York*, 850 F. Supp.2d 1120, 1130 (D. Haw. 2012) (discussing what qualifies as a QWC under RESPA).

Even if Shapley had adequately alleged a QWC, there would be a further deficiency in the complaint: although it generally alleges that CMS "failed to provide a

---

[4] CMS makes the further argument that under Regulation X's terms, a servicer is permitted to establish a specific address for receiving QWCs. Dkt. No. 8, at PageID.145. To the extent CMS had established such an address in the relevant time periods, Shapley may wish to allege a written communication sent specifically to that address in any amended complaint. But the court is not, at least at this stage, persuaded that a failure to do so would justify dismissing a future complaint. CMS does not identify any cases granting a motion to dismiss a complaint for that reason. Regulation X does not, after all, require a servicer to establish a specific address, and RESPA itself does not require a QWC to be sent to one. It merely requires that the communication be "written," that it enable the servicer to "identify" the "name and account of the borrower," *id.* § 2605(e)(1)(B)(i), and that it actually be "recei[ved]" by the servicer, *id.* § 2605(e)(2).

reasonable and complete explanation" for the $5,000 in attorney's fees or "sufficient documentation showing the basis" for the fee, Dkt. No. 1-1, at PageID.18, it does not describe what CMS's response allegedly was. Under federal pleading standards, a plaintiff may not rest on "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Shapley must allege facts that, taken as true, would establish the conclusion she would have the factfinder reach. To do so here, for example, Shapley would need to describe CMS's response to a QWC (setting aside any responses to telephone calls and other communications that would not constitute a QWC) and identify what about it was insufficient. Because the complaint does not do that in its current form, the complaint is not sufficient.

Shapley does not merely allege a failure to provide information; she also alleges that CMS failed to take necessary action. In particular, she alleges that "Defendant failed to properly correct the account after Plaintiff disputed the fees" and that "Defendant refused to accept Plaintiff's regular mortgage payment unless Plaintiff paid disputed and unexplained attorney's fees." Dkt. No. 1-1, at PageID.18. But these are, once again, merely conclusions. To satisfy federal pleading standards, Shapley must allege facts that, if proven, would establish that the conclusions are correct. For example, Shapley might allege facts showing that the disputed fees were, in fact, impermissible. Or she might allege facts showing that CMS had an obligation to accept her regular mortgage payments even though Shapley had not settled the disputed fees.

The current complaint does neither, however, and this is another reason why it does not state a plausible RESPA claim.

There is another deficiency: actual damages is a required element of a RESPA claim, *Hahn*, 424 F. Supp. 3d at 630 (citing *Carswell v. JP Morgan Chase Bank N.A.*, 500 F. App'x 580, 582 (9th Cir. 2012)), yet the complaint does not adequately allege that all of the alleged violations of RESPA caused any. To be sure, if Shapley were to adequately allege in an amended complaint that CMS violated RESPA by failing to remove the disputed fees or by failing to accept her regular mortgage payments, the actual damages from that conduct are self-evident. But to the extent Shapley intends to advance claims based on alleged failures to provide explanations and documentation, she must also adequately allege that these failures caused harm. The current complaint does not.[5]

For the foregoing reasons, Shapley's RESPA claims are DISMISSED.

**C. The Hawai'i Revised Statutes Chapter 480 Claim**

In addition to her contract, implied covenant, and RESPA claims, Shapley raises a claim under Hawai'i Revised Statutes Chapter 480. In particular, she brings a consumer claim under Sections 480-2 and 480-13. Her burden is to allege that CMS engaged in "unfair or deceptive acts or practices in the conduct of any trade or

---

5 CMS makes the further argument that Shapley does not adequately allege that "foreclosure proceedings and foreclosure advancement should have been placed on hold." Dkt. No. 8, at PageID.146. Shapley does not reassert that allegation as part of her RESPA claim, but the court agrees that to the extent Shapley intended this allegation to support a RESPA claim, it is too conclusory to do so.

commerce," Haw. Rev. Stat. § 480-2(a), and that CMS "breached that statutory duty (in a way that caused private damages)," *Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046, 1056 (9th Cir. 2014). In its current form, the complaint does not meet this burden. Although Shapley alleges a number of disputes that she has developed with CMS, she does not allege facts that support the conclusion that her position on these disputes is correct. The complaint only offers conclusory assertions that CMS acted unfairly, deceptively, or impermissibly. To satisfy federal pleading standards, any amended complaint must allege the facts that, taken as true, show these conclusions to be correct. Because the current complaint does not meet this burden, Shapley's Chapter 480 claim is DISMISSED.

**D. The Requests for Accounting, Declaratory Relief, Injunctive Relief, and Punitive Damages**

Shapley's final four counts do not make specific factual or legal allegations, but rather request specific kinds of remedies. Those counts seek an accounting, a declaratory judgment, injunctive relief, and punitive damages. To the extent Shapley sought to advance these as independent claims, therefore, they are DISMISSED. In any amended complaint, Shapley must list these requests only as requests for remedies, separate from her legal and factual allegations rather than as standalone claims.

**E. Leave to Amend**

For the reasons set out above, Shapley's complaint must be dismissed in its entirety because of deficiencies in each of the claims. But it is clear that Shapley could

conceivably remedy the deficiencies in the first four of her claims if given an opportunity to file an amended complaint. For that reason, the court grants her leave to amend. Shapley must not add new defendants or new claims without further leave of court, and any amended complaint she files must be limited to addressing the identified deficiencies in the first four claims she has already brought. That is, Shapley must provide sufficient facts to plausibly support those claims under the federal pleading standards discussed above.

Leave is limited to the first four of Shapley's claims; claims five through eight, which were in reality requests for remedies, should not be reasserted as claims in an amended complaint, though Shapley may request those forms of relief in a "Prayer for Relief" section or similar. Shapley is also free to decide not to reallege any of the first four claims for which leave to amend has been granted. She must correct the identified deficiencies only to the extent that she does choose to reallege any of those claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS CMS's motion to dismiss and DISMISSES the complaint with partial leave to amend.

If Shapley elects to file an amended complaint, she must comply with the following requirements:

(1) Shapley's deadline to file an amended complaint is December 16, 2026;

(2) Shapley's amended complaint must be titled "First Amended Complaint";

(3) Shapley must cure the deficiencies identified above, but may not add any new defendant or any new claims. Leave to amend is limited to the first four of Shapley’s claims.

Shapley is cautioned that failure to timely file an amended complaint that conforms with this order will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED: November 16, 2026, at Honolulu, Hawai‘i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge